1
2
3
4
5
6

Douglas A. Linde, State Bar No. 217584 (dal@lindelaw.net)
Chant Yedalian, State Bar No. 222325 (cy@lindelaw.net)
THE LINDE LAW FIRM
9000 Sunset Blvd., Suite 1025
Los Angeles, CA 90069
(310) 203-9333
(310) 203-9233 FAX
Attorneys for Plaintiff
JESSICA CLARK

7
8
9
10
11

Kevin E. Hyde, Florida Bar No. 0768235 (khyde@foley.com)
FOLEY & LARDNER LLP
One Independent Drive, Suite 1300
Jacksonville, Florida 32202
(904) 359-2000
(904) 359-8700 FAX

12
13
14
15
16

James D. Nguyen, State Bar No. 179370 (jnguyen@foley.com)
FOLEY & LARDNER LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067
(310) 277-2223
(310) 577-8475 FAX
Attorneys for Defendant
STEIN MART, INC.

17
18
19

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JESSICA CLARK, on behalf of herself and all others similarly situated, <br><br>           Plaintiff, <br><br> v. <br><br> STEIN MART, INC.; and DOES 1 through 10, inclusive, <br><br>           Defendants. | Case No.: CV07-0197 RC <br><br> **MOTION FOR FINAL APPROVAL OF SETTLEMENT OF CLASS ACTION** <br><br> **HEARING** <br> Date:  September 24, 2008 <br> Time:  9:30 a.m. <br> Court Room:  23 <br> Judge: Hon. Rosalyn M. Chapman |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on September 24, 2008 at 9:30 a.m. or as soon thereafter as the matter may be heard before the Honorable Rosalyn M. Chapman in Court Room 23, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff Jessica Clark and Defendant Stein Mart, Inc. will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order:

1.    Granting final approval of the proposed class action settlement on the terms and conditions set forth in the Stipulation of Settlement and Release (hereinafter sometimes referred to as "Stipulation," "Stipulation of Settlement," "Settlement" or "Agreement");[1]

2.    Finding that the Settlement is fair, reasonable and adequate;

3.    Confirming this Court's previous findings that the requirements for class certification, for settlement purposes, are satisfied;

4.    Certifying the following class for settlement purposes ("Settlement Class"):  All persons in the United States to whom, on or after December 4, 2006, Stein Mart, Inc. provided an electronically printed receipt at the point of a sale or transaction on which Stein Mart, Inc. printed more than the last five digits of the person's credit card or debit card number and/or printed the expiration date of the person's credit or debit card;

5.    Appointing Plaintiff, Jessica Clark, as representative for the Settlement Class;

6.    Appointing Chant Yedalian and Douglas A. Linde of The Linde Law Firm as Class Counsel;

---

[1]    A copy of the fully executed Stipulation of Settlement was filed on May 15, 2008 as Exhibit 1 to the Parties' Amended Motion for Preliminary Approval of Settlement of Class Action.  Capitalized terms shall have the same meanings as in the Stipulation, unless indicated otherwise.

- 1 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

7.  Finding that notice of the Settlement to the Settlement Class members, as set forth in the Stipulation of Settlement, has been completed in conformity with the Court's preliminary approval Order of May 21, 2008;

8.  Binding all Settlement Class members who have not timely excluded themselves from the Settlement Class to the releases set forth in the Stipulation of Settlement;

9.  Barring and enjoining, to the extent permitted by law, all Settlement Class members who have not timely excluded themselves from the Settlement Class from asserting against the Defendant any claims released in the Stipulation of Settlement;

10.  Approving and entering, as set forth in the [Proposed] Order, an order which requires Stein Mart, Inc.'s ongoing compliance with the receipt truncation requirements of Fair and Accurate Credit Transactions Act ("FACTA");

11.  Awarding Class Counsel reasonable attorneys' fees and costs in the amount of $150,000 to be paid to Class Counsel by Stein Mart, Inc.;

12.  Awarding Jessica Clark, an enhancement fee in the amount of $2,500 for her services as representative for the Settlement Class, to be paid to her by Stein Mart, Inc.;

13.  Directing Stein Mart, Inc. to distribute and/or cause to be distributed the Settlement benefits as required by the Stipulation of Settlement;

14.  Directing the Parties and the Settlement Administrator, CPT Group, Inc., to effectuate all terms of the Settlement;

15.  Dismissing the Action with prejudice pursuant to the terms set forth in the Stipulation of Settlement;

16.  Retaining, without affecting the finality of this Judgment in any way, continuing jurisdiction over the interpretation, implementation and enforcement of the Settlement and all orders and judgments entered in connection therewith; and

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

17.     Directing the Clerk of the Court to enter the Court's Order as a final judgment.

This Motion is based upon this Notice of Motion and Motion and Exhibits attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

Dated: September 2, 2008            THE LINDE LAW FIRM


                                    By: __/s/ Chant Yedalian_____
                                         Douglas A. Linde
                                         Chant Yedalian
                                    Attorneys for Plaintiff, Jessica Clark,
                                    individually and on behalf of others similarly
                                    situated


Dated: September 2, 2008            FOLEY & LARDNER LLP


                                    By: _____
                                         Kevin E. Hyde
                                    Attorneys for Defendant, Stein Mart, Inc.

- 3 -

17.    Directing the Clerk of the Court to enter the Court's Order as a final judgment.

This Motion is based upon this Notice of Motion and Motion and Exhibits attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

Dated: September 2, 2008            THE LINDE LAW FIRM


                                     By:   /s/ Chant Yedalian
                                           Douglas A. Linde
                                           Chant Yedalian
                                     Attorneys    for    Plaintiff,   Jessica   Clark,
                                     individually and on behalf of others similarly
                                     situated


Dated: September 2, 2008            FOLEY & LARDNER LLP


                                     By: _____
                                           Kevin E. Hyde
                                     Attorneys for Defendant, Stein Mart, Inc.

- 3 -

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION……………………………………………………1

II.     BACKGROUND ……………………………………………….........4

III.    NOTICE, OPT-OUTS AND OBJECTIONS ………...…………………5

    1.      Notice to the Settlement Class …………………………….……..5

    2.      CAFA Notice to Government Entities …………………………7

    3.      Opt-Outs ………………………………………………...……7

    4.      Objections by Settlement Class Members ……………,………...……7

    5.      No Objections by Any Government Entity …………,………..…….8

IV.     SUMMARY OF THE SETTLEMENT ……………………,,,,………………8

V.      THE SETTLEMENT MERITS FINAL APPROVAL …,,,,,,………………..11

    1.      The Two-Step Approval Process……………………………...……...11

    2.      The Requirements For Final Approval Are Satisfied ………….…….13

        A.      The Court Has Already Found That Plaintiff's Claims Merit

                Class Certification for Settlement Purposes ……………..…….13

        B.      Strong Judicial Policy Favors Approving

                the Settlement ………………………………………..…..13

        C.      The Settlement is Fair, Reasonable and Adequate ………….....15

VI.     MODEST ATTORNEYS' FEES ARE SOUGHT ……………………….…19

VII.    THE REQUESTED SERVICE PAYMENT TO NAMED

    PLAINTIFF IS REASONABLE ………………..………….……………20

VIII.   CONCLUSION …………………………………………..……………..21

i

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>**Federal Cases**</u>                                                                 **Page(s)**

4

*Acosta v. Trans Union LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007)……………………………………………13

5

6

*Armstrong v. Board of School Directors of the City of Milwaukee*,
    616 F.2d 305 (6th Cir. 1980)……………...……………………………12

7

8

*Bell Atlantic Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993). ……………...…………….…………………14

9

10

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992)…………..………………...…………14

11

12

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977)…………..………………...………15

13

14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)………..…………………….……………13

15

16

*Hanrahan v. Britt*,
    174 F.R.D. 356 (E.D. Pa. 1997)………………...……………...……15

17

18

*In re Cendant Corp., Derivative Action Litigation*,
    232 F.Supp.2d 327 (D. N.J. 2002)………………………………….....17

19

20

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
    216 F.R.D. 197 (D. Me. 2003)………………………………....……18

21

22

*In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768, 785 (3d Cir. 1995)……………………….…………14

23

24

*In re Omnivision Technologies, Inc.*,
    2008 WL 123936, *4 (N.D. Cal. Jan. 9, 2008)………………….....……16

25

26

27

28

ii

**Page(s)**

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)…………………………………..………20, 21

*National Rural Telecom. Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)…………………………………….…..……14

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982)………….…..……………………12, 14, 15, 16

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000)………………………….………….…..……19

*Principe v. Ukropina* (*In re Pacific Enters. Sec. Litig.*)
    47 F.3d 373 (9th Cir. 1995)…………………………………………………11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)……………………………………….…..…..13

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)…………………………………………….…..11

*Weiss v. Mercedes-Benz*,
    899 F.Supp.1297 (D.N.J. 1995). ……………………....................….……14

**Federal Statutes**

15 U.S.C. § 1681 et seq., Fair Credit Reporting Act ("FCRA") …………...………1

15 U.S.C. § 1681(c)(g) ………………………………………………………...1

15 U.S.C. § 1681n ………………………………………….………...1, 8, 14

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23…………………………….……….…………………12, 13, 15, 16

**Other Authorities**

*Newberg on Class Actions*, 4th Ed……………………………….…………..……14

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On May 21, 2008, this Court granted preliminary approval of the class action Settlement in this case, preliminarily finding that the terms of the Settlement are fair, reasonable, and adequate.

Since that time, a significant event occurred which firmly cements the fairness, reasonableness and adequacy of the Settlement and provides additional reasons why the Court should grant final approval of the Settlement.

A new law based upon a House Bill, H.R. 4008, entitled the Credit and Debit Card Receipt Clarification Act (hereinafter sometimes referred to as the "New Law" or "H.R. 4008"), was unanimously passed in both the House and the Senate and was signed into law by the President on June 3, 2008.[2]   The New Law purports to immunize all merchants against "willful" violations of the Fair and Accurate Credit Transactions Act ("FACTA") based on the printing of credit/debit card expiration dates on customer receipts which occurred between December 4, 2004 and June 3, 2008 (as is alleged to have occurred with Stein Mart in this case).

In other words, had this case not settled on a class basis, under the express provisions of the New Law, there would not be a basis for the recovery of statutory damages nor would there be a basis to seek certification of a class based upon allegations of "willful" violations.

Indeed, most cases pending at the time the New Law was enacted were simply dismissed, without any benefit to a class.  For example, as a result of the

---

[2] H.R. 4008 adds the following new subsection to 15 U.S.C. 1681n:

"(d) Clarification of Willful Noncompliance- For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt."

- 1 -

New Law, in FACTA cases where a contested class certification motion was previously granted by a court, but no settlement reached, Class Counsel has sought and has been granted decertification of the class. *Kesler v. Ikea U.S, Inc.*, Case No., CV-07-0568-JVS (RNBx) (C.D. Cal.), and *Klimp v. Rip Curl, Inc.*, CV-07-1383-JVS (FFMx) (C.D. Cal.).[3]

Fortunately, Class Counsel negotiated a waiver provision as part of the Settlement in this case which provides that if a change of law occurs after the date the Settlement Agreement is signed (as in fact occurred with the enactment of the New Law), such a change of law shall not affect the enforceability of the Settlement. As a result of that waiver, upon final approval of the Settlement, Settlement Class members will be able to receive the Settlement benefits which this Court previously determined are fair, reasonable and adequate.

In stark contrast, Class Counsel is informed that other class-wide settlements in FACTA cases which did not have a waiver provision similar to the one in this case and which had not yet obtained final approval have essentially fallen apart with defendants seeking to dismiss the cases based upon the New Law. *E.g., Hile v. Ritz Camera Centers, Inc.*, Case No., CV-07-00716-SBA (N.D. Cal.).[4]

In sum, absent this Settlement (which, upon final approval, is certain to provide benefits to the Settlement Class) the Settlement Class would likely receive nothing and, further, there would not be a basis for class certification.

Of course, if any class member had a different view and would have liked to pursue litigation against Stein Mart on his/her own, the Settlement afforded them an opportunity to opt-out, which is an option elected by a small fraction of the class.

Although there are a few objectors to the Settlement who have complained about the nature of the benefits provided by the Settlement, none of the objectors have considered, let alone explained the ramifications of the New Law in their

---

[3] Linde Decl., ¶ 6.

[4] Linde Decl., ¶ 7.

- 2 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT OF CLASS ACTION

objections.  While these objectors may not be satisfied with the benefits provided under this Settlement (as this Court is well aware, they were the best benefits that were capable of being negotiated at the time the Settlement negotiations took place before the Court), as a practical matter and as explained above, as a result of the New Law, absent the Settlement there would likely not be any benefits available to the Settlement Class members today.

This view is also supported by another significant event which occurred after the Parties participated in two Settlement Conferences before this Court and agreed to Settle this matter.  As the Court is well aware, class certification was a hotly contested issue in FACTA cases with most courts in California having denied certification.  Absent the Parties agreeing to settle this matter and, in conjunction therewith, agreeing to reassign the case to this Court for all further proceedings, the case would have remained with the Honorable Phillip S. Gutierrez, before which a class certification motion in this case had already been filed.  While the Parties did not know how Judge Gutierrez would rule on class certification in a FACTA case at the time they were negotiating the Settlement, shortly after the Parties had agreed to settle this matter, Judge Gutierrez denied class certification in two other FACTA cases.  *Klimp v. American Apparel, Inc., et.al.*, Case No. CV-07-6448-PSG (CTx), Order Denying Plaintiff's Motion for Class Certification dated March 4, 2008 (C.D. Cal.); *Vasquez-Torres v. StubHub, Inc.*, 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. March 4, 2008).  Class Counsel does not doubt that absent this Settlement and reassignment to this Court for further proceedings, Judge Gutierrez would have likewise denied class certification in this case, thereby defeating any attempt by the named Plaintiff and Class counsel to obtain any benefits to other class members.[5]

Hence, again, while certain objectors complain about the nature of the benefits provided by the Settlement, in light of the New Law and Judge Gutierrez'

---

[5] Yedalian Decl., ¶ 11.

- 3 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

1  denial of class certification in two other FACTA cases, absent this Settlement, there
2  would likely be no class nor any benefits to class members.

3      The Settlement was fair, reasonable and adequate when this Court granted
4  preliminary approval.   In light of recent events, it is abundantly more fair,
5  reasonable and adequate now.   Accordingly, it is respectfully requested that the
6  Court grant final approval of the Settlement.

7

8  **II.   BACKGROUND**

9      On January 8, 2007, Plaintiff commenced this action (the "Action") by filing a
10  proposed class action complaint ("Complaint") against Defendant Stein Mart, Inc.
11  ("Stein Mart" or "Defendant") which alleges, *inter alia*, that on and after December
12  4, 2006, Defendant willfully violated FACTA[6] by printing the card expiration date
13  on receipts provided to debit and credit card holders at Defendant's retail store
14  locations.

15      FACTA provides that any merchant which accepts credit and/or debit cards
16  after December 3, 2006 is prohibited from printing "the expiration date upon any
17  receipt provided to the cardholder at the point of sale or transaction."   15 U.S.C. §
18  1681(c)(g).

19      After December 3, 2006, Defendant provided a total of 2,798,747 credit card
20  receipts to its customers on which receipts Defendant printed the card's expiration
21  date.

22      A merchant who willfully fails to comply with FACTA is liable for (1) actual
23  damages, if any, or statutory damages of not less than $100 and not more than
24  $1,000, (2) punitive damages, and (3) costs and attorney's fees.   15 U.S.C. § 1681n.

25      Defendant denies any liability or wrongdoing of any kind associated with the
26  claims alleged in the Complaint, including, specifically, a denial that any violation

27
28  _____
   [6] FACTA is a subset of statutes contained within the Fair Credit Reporting
   Act ("FCRA"), codified at 15 U.S.C. § 1681, *et seq.*

- 4 -

of FACTA was willful, and further denies that, for any purpose other than settling this lawsuit, this Action is appropriate for class treatment.

As this Court is well aware, the Stipulation of Settlement and Release (hereinafter sometimes referred to as "Stipulation," "Stipulation of Settlement," "Settlement" or "Agreement"), which was attached to the Parties' Amended Motion for Preliminary Approval of Settlement of Class Action as Exhibit 1, and its accompanying exhibits are the product of and codify the settlement reached by the Parties with the Court's assistance during the two full-day Settlement Conferences held on February 6, 2008 and February 21, 2008.

On May 21, 2008, this Court granted preliminary approval of the class action Settlement in this case, preliminarily finding that the terms of the Settlement are fair, reasonable, and adequate, and ordered the Parties to give notice to the Settlement Class in accordance with the terms of its Order in order to apprise members of the Settlement Class of the Settlement and allow them an opportunity to opt-out of or object to the Settlement.

The notice phase is now complete and the results thereof are explained in section III, below.

III.    **NOTICE, OPT-OUTS AND OBJECTIONS**

   1.    <u>Notice to the Settlement Class</u>

Court approved notice to Settlement Class members has been given in the following ways:

<u>Newspaper Notice</u>: In conformance with the Court approved notice requirements, a Published Notice (Exhibit B to the Settlement Agreement) was published in each of the newspapers in the markets in which Stein Mart routinely advertised at the time the Court ordered notice was due.[7]  A complete list of the newspapers and date of publication of the Published Notice in each newspaper is

---

[7] Hawkins Decl., ¶ 3.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
                                                                OF CLASS ACTION

attached as Exhibit 2 to the Declaration of Hunt Hawkins filed concurrently herewith.

In-Store Notice: In conformance with the Court approved notice requirements, Stein Mart posted an in-store notice in a conspicuous place in each of stores on or before May 31, 2008, with the notice in each store remaining posted for no less than thirty days.[8]

Website Notice By Defendant: In conformance with the Court approved notice requirements, on or before May 31, 2008 and lasting for a period of no less than ninety days, Defendant posted a notice on the homepage of its website, www.SteinMart.com, through which notice viewers could hyperlink to the Settlement Website www.SteinMartSettlement.com.[9]

Settlement Website: In conformance with the Court approved notice requirements, on May 25, 2008, a website was published on the internet at the URL www.SteinMartSettlement.com, which set forth a summary of the terms of the Settlement, stated the means by which Settlement Class members may communicate with the Settlement Administrator and opt-out of the Settlement, and provided, free of charge, a viewable, printable and downloadable copy, in PDF file format, of relevant documents.[10]

Stein Mart MasterCard Rewards Cardholder Statements: In conformance with the Court approved notice requirements, Stein Mart inserted a notice in at least one of the credit card statements mailed to each Stein Mart MasterCard Rewards credit card holder.[11]

Mailing to Preferred Customers: In conformance with the Court approved notice requirements, Stein Mart mailed notice to each of its Preferred Customers.[12]

---

[8] Hawkins Decl., ¶ 4.

[9] Hawkins Decl., ¶ 5.

[10] Yedalian Decl., ¶ 18.

[11] Hawkins Decl., ¶ 6.

[12] Hawkins Decl., ¶ 7.

CV07-0197 RC

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

### 2.   CAFA Notice to Government Entities

Pursuant to the Class Action Fairness Act ("CAFA"), Stein Mart provided notice of the proposed Settlement to state and federal government authorities to allow each such entity an opportunity to object.[13]

### 3.   Opt-Outs

During the opt-out period which lasted from May 21, 2008 through August 15, 2008, a total of 240 valid and timely opt-out requests were received by the Settlement Administrator.[14]

Relative to the 2,798,747 credit card receipts at issue, the ratio of opt-outs (number of opt-outs divided by the 2,798,747 credit card receipts at issue) is **.0000857.**

### 4.   Objections by Settlement Class Members

During the objection period which lasted from May 21, 2008 through August 15, 2008, a total of five objections were made with the Court.[15]

Relative to the 2,798,747 credit card receipts at issue, the ratio of objections (number of objections divided by the 2,798,747 credit card receipts at issue) is **.0000017.**

Ten additional objections were received by the Settlement Administrator and/or Class Counsel but were not filed with the Court in contravention of the procedure specified in the Long Form Notice and as required by paragraph 10 of the Court's May 21, 2008 Order granting preliminary approval of Settlement.[16]

---

[13] Hawkins Decl., ¶ 8.

[14] Hitomi Decl., ¶ 8.

[15] The five objections, each of which are in the form of a letter, are as follows: letter from Annette E. Williams, Docket No. 48; letter from Mary Anne Walters, Docket No. 50; letter from Pauline Stinnett, Docket No. 51; letter from Jean Marcuzzo, Docket No. 52; and letter From Alexandra Johnson, Docket No. 53.

[16] The ten objections which were not filed, each of which are in the form of a letter, are as follows: letter from Celita Wolfe; letter from Frances Brittnacher; letter from Janice Palus; letter from Jim Kaminski; letter from Judy Giljohan; letter from Walmatine Parks; letter from Diane Jachura; and joint letter from Tenille Smith, Ruth Garcia and Roslyn Boyce.  Exhibit 1A-1H.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

Nonetheless, even assuming that these objections were properly made, which they were not, relative to the 2,798,747 credit card receipts at issue, the ratio of objections (15 objections divided by the 2,798,747 credit card receipts at issue) would still only be **.0000053.**

### 5. No Objections by Any Government Entity

CAFA requires that, within ten days after a proposed settlement of a class action is filed, notice, including a copy of the complaint, proposed settlement and a schedule of future hearings, must be provided to the "appropriate" state and federal officials. 28 U.S.C. § 1715. In this case, despite (CAFA) notice to 53 government authorities, not a single one of them has objected.[17] This fact likewise favors final approval of the Settlement.

## IV. SUMMARY OF THE SETTLEMENT

A summary of the terms of the Settlement is as follows:

- Defendant has agreed to the entry of an order (as set forth in the [Proposed] Order lodged herewith) requiring its ongoing compliance with FACTA's truncation requirements.

- The Parties stipulated to certification of a settlement class, and the Court preliminarily certified a settlement class consisting of: All persons in the United States to whom, on or after December 4, 2006, Stein Mart, Inc. provided an electronically printed receipt at the point of a sale or transaction on which Stein Mart, Inc. printed more than the last five digits of the person's credit card or debit card number and/or printed the expiration date of the person's credit or debit card ("Settlement Class").

---

[17] Hawkins Decl., ¶ 8.

- 8 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT OF CLASS ACTION

- After December 3, 2006 and through January 11, 2007, Defendant provided a total of 2,798,747 credit card receipts to its customers on which receipts Defendant printed the card's expiration date.

- The Settlement requires Stein Mart to include a Settlement Coupon as either an advertisement (i.e., text within body of a newspaper) or a circular (i.e., a loose leaf insert accompanying the pages of a newspaper) in each of the newspapers in the markets in which Stein Mart routinely advertises.  The Settlement Coupon shall provide a three tier ($10/$20/$30) discount, with the applicable discount calculated as follows: a $10 discount shall be applied to a merchandise purchase transaction (of one or more items the total purchase price of which is) equal to or greater than $50 but less than $100; a $20 discount shall be applied to a merchandise purchase transaction (of one or more items the total purchase price of which is) equal to or greater than $100 but less than $150; a $30 discount shall be applied to a merchandise purchase transaction (of one or more items the total purchase price of which is) equal to or greater than $150.

- The Settlement Coupon may be used at any Stein Mart store for the purchase of any merchandise except shoes.  No more than one Settlement Coupon may be applied per purchase transaction.  The Settlement Coupon may be used by anyone (including non Settlement Class members) and is fully transferable.  The Settlement Coupon shall contain an expiration date and shall expire no earlier than 30 days from the date it is included in its respective newspaper.

- Based upon Stein Mart's newspaper list at the time of the Settlement, it is estimated that the Settlement Coupon will reach approximately 13 million households.

- Assuming a 100% redemption rate at the $30 discount level (13,000,000 estimated circulation of the Settlement Coupon multiplied by $30), the Settlement provides up to $390 million dollars worth of discounts.

- Because the actual redemption rate is unknown, the Parties have also agreed to a redemption floor.  The redemption floor provides that in the event the issuance of the Settlement Coupon does not result in at least a total of $2,238,997.60 of actual discounts redeemed, Stein Mart shall continue to issue an additional settlement coupon(s), by including it in each of the newspapers in the markets in which Stein Mart then routinely advertises, until such time as at least $2,238,997.60 of actual discounts are redeemed.

- Court approved notice to class members has been given in the following ways: (1) Newspaper Notice published in each of the newspapers in the markets in which Stein Mart routinely advertises; (2) In-Store Notice whereby Defendant posted a notice in a conspicuous place in each of Defendant's retail store locations for a period of no less than thirty days; (3) Website Notice By Defendant whereby Defendant conspicuously posted a notice on the homepage of its website, www.SteinMart.com, for a period of no less than ninety days, through which notice viewers could hyperlink to the Settlement Website; (4) Settlement Website which consisted of a website on the internet which set forth a summary of the terms of the Settlement, stated the means by which Settlement Class members may communicate with the Settlement Administrator and opt-out of the Settlement, and provided, free of charge, a viewable, printable and downloadable copy, in PDF file format, of relevant documents; (5) Stein Mart MasterCard Rewards Cardholder Statements which included an insert consisting of a notice mailed to each Stein Mart MasterCard Rewards credit card holder; and (6) Mailing to Preferred Customers of a short-form notice mailed to each of Stein Mart's Preferred Customers.

- Settlement Class members had until August 15, 2008 to exclude themselves from the Settlement by returning, by postal mail, a completed Opt-Out Form to the Settlement Administrator.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

• The Parties agreed, with the Court's approval, to appoint CPT Group, Inc., 16630 Aston, Irvine, California 92606, an experienced Settlement Administrator to perform the duties of a settlement administrator.

• Defendant has incurred and paid for all of the Settlement Administrator's costs and fees and all other costs and fees incurred or required to administer the Settlement, including but not limited to the costs of notice.

• Class Counsel will apply to the Court, through this Motion, for an award of up to $150,000 in attorneys' fees and costs, payable by Defendant. This award shall not in any way affect Settlement Class members' settlement benefits.

• Class Counsel will also apply, through this Motion, for a service payment (enhancement award) of $2,500 to the named Plaintiff, payable by Defendant, to compensate Plaintiff for its service as the representative of the Settlement Class.

## V.    THE SETTLEMENT MERITS FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Principe v. Ukropina* (*In re Pacific Enters. Sec. Litig.*), 47 F.3d 373, 378 (9th Cir. 1995) ("When reviewing complex class action settlements, we have a 'strong judicial policy that favors settlements.'"); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply with particular force in a case such as this where an allegedly illegal practice affected millions of consumers.

### 1.    <u>The Two-Step Approval Process</u>

Any proposed class settlement must be reviewed and approved by the Court. FRCP 23(e). This is done in two steps. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Armstrong v. Board of School Directors of the City of*

- 11 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

*Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980).  The purpose of this hearing is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Ibid.*  At the second step of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.

This case is now at the second stage, as the Court has already preliminarily approved the Settlement.  In accordance with the Court's Order, the Settlement Class has been given notice of the Settlement in the manner most practicable under the circumstances: (1) Published notice in each of the newspapers in the markets in which Stein Mart routinely advertises, (2) in-store notice in each of Stein Mart's stores, (3) mailed notice to Stein Mart's MasterCard Rewards cardholders, (4) mailed notice to Stein Mart's Preferred Customers, and (4) through two websites, one at www.SteinMartSettlement.com (which includes the opt-out form and other documents) with a link from the second website, Stein Mart's own website.  The Court previously found such notice to be sufficient.[18]

//

//

---

[18] Federal Rule of Civil Procedure 23(c)(2)(B) states, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances. . . ."  Rule 23(e)(B) similarly requires, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  The fundamental purpose of notice of a proposed class action settlement is to apprise absent class members of their rights to object to the proposed settlement or exclude themselves from the settlement.  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *In re Equity Funding Corp. of America*, 603 F.2d 1353, 1361 (9th Cir. 1979); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977).  "Due process requires no more." *Reynolds v. National Football League*, 584 F.2d 280, 285 (8th Cir. 1978).

- 12 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

## 2.   <u>The Requirements For Final Approval Are Satisfied</u>

In order to grant final approval of a class action settlement, a court must satisfy two fundamental inquiries. "First, the district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In other words, the court must determine that the lawsuit qualifies as a class action under FRCP Rule 23 to begin with. *E.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)). This Court has done that already, in the course of analyzing the propriety of preliminary certification for settlement purposes.

Second, a reviewing court must determine whether the settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. As one court summarized recently, when parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

### A.   The Court Has Already Found That Plaintiff's Claims Merit Class Certification for Settlement Purposes

In granting the Parties' Amended Motion for Preliminary Approval, this Court previously found that class certification, for purposes of settlement, is appropriate. Nothing has changed since the Court found conditional certification of the Settlement class is appropriate (*i.e.,* under the FRCP 23(a) and (b) factors). Therefore, the Parties do not restate the arguments for class certification for settlement purposes that they asserted in their Amended Motion for Preliminary Approval, but rather rely on their previous briefing and this Court's Order thereon.

### B.   Strong Judicial Policy Favors Approving the Settlement

There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit has specifically stated that, "it must

- 13 -

not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation...." *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).[19]

When a settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993). A federal district court articulated the rationale for this policy as follows:

> "[W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in complex commercial litigation." *Weiss v. Mercedes-Benz*, 899 F.Supp.1297, 1300-01 (D.N.J. 1995), *aff'd without op.,* 66 F.3d 314 (3d Cir. 1995).

The proposed settlement in this case enjoys a presumption of fairness because it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995);  see also 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 90 (2002).

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *National Rural Telecom. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).  This is because parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Ibid.*  "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of

---

[19] This policy is reflected in the Federal Rules of Civil Procedure and the Local Rules of this court, which encourage facilitating the settlement of cases. See Fed. R. Civ. P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement); L.R. 16-2.9 (requiring parties to exhaust all possibilities of settlement); L.R. 16-15 to 15.9 (setting forth policies and procedures for settlement including encouraging disposition of civil litigation by settlement by any reasonable means).

- 14 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT OF CLASS ACTION

1   counsel.'" *Ibid,* citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *e.g.*,

2   *Officers for Justice*, 688 F.2d at 625 (a court's inquiry is ultimately limited "to the

3   extent necessary to reach a reasoned judgment that the agreement is not the product

4   of fraud or overreaching by, or collusion between, the negotiating parties.");

5   *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of

6   correctness applies to a class action settlement reached in arms-length negotiations

7   between experienced, capable counsel after meaningful discovery).

### C.    The Settlement is Fair, Reasonable and Adequate

9       No single criterion determines whether a class action settlement meets the

10  requirements of Rule 23(e).   The Ninth Circuit has directed district courts to

11  consider a variety of factors without providing an "exhaustive list" or suggesting

12  which factors are most important. *Staton*, 327 F.3d at 959.

13      Thus, in determining whether a proposed settlement is fundamentally fair,

14  adequate and reasonable, a court may consider any or all of the following factors, if

15  applicable:  the strength of the plaintiffs' case; the risk, expense, complexity and

16  likely duration of further litigation; the risk of maintaining class action status

17  through trial; the amount offered in settlement; the extent of discovery completed,

18  and the stage of the proceedings; the experience and views of counsel; the presence

19  of a governmental participant; and the reaction of the class members to the

20  settlement.   *Officers for Justice*, 688 F.2d at 625.   "The relative degree of

21  importance to be attached to any particular factor will depend upon and be dictated

22  by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique

23  facts and circumstances presented by each individual case." *Ibid.*

24      Given the impossibility of predicting any litigation result with certainty, a

25  district court's evaluation of a settlement essentially amounts to "nothing more than

26  'an amalgam of delicate balancing, gross approximations and rough justice.'" *Ibid.*

27  The ultimate touchstone, however, is whether "class counsel adequately pursued the

28  interests of the class as a whole." *Staton*, 327 F.3d at 961.  As explained in *Officers*

- 15 -

*for Justice,* the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

Here, approval is plainly warranted when the Court considers the factors the Ninth Circuit has laid out for guidance in the Rule 23(e) determination.  First, in terms of the strength of Plaintiff's case, proving willfulness was certainly not going to be an easy task at trial.  Moreover, as previously discussed, H.R. 4008 has now become law, effectively foreclosing any chance of monetary recovery by Plaintiff and the class, if not for Defendant's agreement as part of the Settlement to waive any advantages arising out of H.R. 4008.

Relatedly, in terms of the risks of further litigation, the parties were approaching a trial date at the time the Settlement was reached.  The outcome of trial is, as always, uncertain, and there would likely have been additional appeals after any verdict.  If, for example, Defendant "were to appeal a jury verdict in favor of Plaintiffs, it could be years before Plaintiffs would see a dollar." *In re Omnivision Technologies, Inc.,* 2008 WL 123936, *4 (N.D. Cal. Jan. 9, 2008). In addition, Plaintiff's class certification was pending at the time of the settlement discussions, and, absent the Settlement and transfer to this Court for further proceedings, there would not be a class given the denial of class certification by Judge Gutierrez in another case (cite) which followed shortly after the Parties had agreed to settle the matter.  Above and beyond these more traditional risks of further litigation in any class action, it bears emphasizing that H.R. 4008 arguably disposes of Plaintiff's entire case.[20]   The Settlement has prevented Defendant from seeking dismissal of Plaintiff's claims based on H.R. 4008.

---

[20] Plaintiff does not concede that H.R. 4008 is constitutional, but recognizes that establishing that it is not would be a very difficult task for a number of reasons, including the fashion in which it was drafted.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

The up to $390,000,000 worth of settlement benefits to Settlement Class members is a substantial recovery and substantial benefit, particularly in light of the very real risks and uncertainty of continued litigation, including the possibility that Settlement Class members will likely end up with no recovery or even no claim in light of the enactment of H.R. 4008. The real and immediate benefits to Settlement Class members are further supported by the fact that there is a redemption floor, which provides that settlement coupons will be distributed until a minimum of $2,238,997.60 worth of discounts is redeemed.

The up to $30 in discounts, available to each class member gives consumers a 30% value compared to the minimal level of statutory damages available for willful violation of FACTA ($100) which is unquestionably a reasonable settlement. Although $30 only presents a 3% value compared to the maximum possible recovery of $1,000 in statutory damages, the propriety of awarding full statutory damages to class members who do not claim actual monetary loss is strongly disputed. Many FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory damages to begin with, at the very least "excessive" statutory damages that threaten merchants with staggering or annihilating liabilities. Since it remains to be seen how such disputes will eventually be resolved, if in fact they are ever resolved given that H.R. 4008 has now effectively resulted in the dismissal of most FACTA lawsuits, the value negotiated by the parties represents a fair compromise well within the range of reasonableness. *See*, *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327 (D. N.J. 2002) (approving settlement which provided 2% value compared to maximum possible recovery); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197 (D. Me. 2003) (approving settlement providing $13 to class members overcharged an average of 23 cents).

In terms of discovery, Class Counsel had completed sufficient discovery, had consulted with multiple experts in the field of identity theft and was sufficiently

- 17 -

MOTION FOR FINAL APPROVAL OF SETTLEMENT
OF CLASS ACTION

informed about the facts and the issues to engage in reasonable settlement discussions.

The views of Class Counsel also weigh in favor of the Settlement.  Counsel for the class are experienced in litigating this type of class action.   Class Counsel and the class representative believe the Settlement should be approved as fair, reasonable and adequate, particularly now that H.R. 4008 would otherwise likely wipe out any possibility of recovery for the class.  "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable.  Therefore, the recommendation of counsel also weighs in favor of approving the Settlement." *In re Omnivision,* at *6.

Moreover, it also bears repeating the fact that the Settlement was reached directly in the presence of the Court (during the two Settlement Conferences held before it) and with the Court's guidance.

Finally, the reaction of the class is a relevant consideration.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomm. Coop., 221 F.R.D. at 529;* see also *In re Omnivision*, at *6.  Here, there have only been five objections filed with the Court (a ratio of only .0000017 objections to credit card receipts at issue), none of which address the impact of H.R. 4008.

For all of the reasons discussed above, the arms-length settlement reached by the Parties in this case during negotiations before and with the input of this Court, after extensive litigation, is unquestionably fair, reasonable and adequate.  The Settlement provides valuable, tangible benefits of up to $390,000,000 worth of settlement benefits to Settlement Class which the Parties believe many of Stein Mart's customers will likely appreciate and make use of, and it eliminates the risks and expense of further litigation, including the risk that H.R. 4008 would be applied

1   to leave class members with nothing.   Final approval under Rule 23(e) should be
2   granted.

3

4   **VI.   MODEST ATTORNEYS' FEES ARE SOUGHT**

5        The Settlement provides, and Class Counsel seeks, subject to the Court's
6   approval, a payment by Stein Mart, Inc. to Class Counsel of $150,000 for attorneys'
7   fees.  As the Court is aware, the attorneys' fees were negotiated in the presence of
8   the Court during the February 21, 2008 Settlement Conference, after the parties had
9   negotiated and agreed on the benefits to the Settlement Class.  This is a separate
10  payment to be paid by Defendant and does not in any way affect the value or
11  amount of benefits to be made available to the Settlement Class.

12       The Parties believe that in light of the amount of work done in this case by
13  Class Counsel, the equitable relief secured, and the ratio of fees requested in
14  relation to the up to $390,000,000 worth of the discounts available under the
15  settlement, as well as the minimum redemption floor of $2,238,997.60, this fee
16  request is both fair and reasonable.

17       CAFA permits attorneys fees in coupon settlements to be based upon either
18  the value of coupons actually redeemed or the attorney's hourly rates.  28 U.S.C. §
19  1712.  While the Ninth Circuit has not specifically addressed post-CAFA coupon
20  settlements, it has "established twenty five percent-of-recovery as a 'benchmark'
21  for attorneys' fees calculations under the percentage-of-recovery approach."
22  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

23       In this case, due to the redemption floor, this settlement provides a
24  guaranteed minimum of $2,238,997.60 of discounts actually redeemed.   Class
25  Counsel's fees of $150,000, which is a separate fee payment and does not in any
26  way effect the value or amount of benefits to the Settlement Class, amounts to less
27  than 7% of the minimum benefits to class members, well under the Ninth Circuit's
28  25% benchmark.

- 19 -

As set forth in the Declarations of Chant Yedalian and Douglas A. Linde, filed concurrently herewith, a total of 313.25 hours of work has and/or will be incurred by Class Counsel in prosecuting this case and attempting to secure benefits for the Settlement Class.  Accordingly, the lodestar alone, without a multiplier, for this time equals $140,962.50.  Hence, the requested fees of $150,000 should also be approved because, not only does it amount to no less than 7% of the minimum benefits to class members to be paid separately by Defendant, it is proportionate to Class Counsel's lodestar (before applying a multiplier) in this matter.

## VII.   THE REQUESTED SERVICE PAYMENT TO NAMED PLAINTIFF IS REASONABLE

The named Plaintiff, Jessica Clark, seeks a modest enhancement award of $2,500 for her services on behalf of absent class members.  Plaintiff risked intrusive discovery, took time away from work to have her deposition taken, participated in two day-long Settlement Conferences with the Court, risked paying defense costs in the event the litigation was unsuccessful and, contributed additional valuable time and resources towards this litigation.  Defendant does not oppose the requested enhancement award to the named Plaintiff and has agreed to pay it.

Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694.

- 20 -

1    Here, there is only one class representative, and the requested enhancement
2    award in the amount of $2,500 is modest, extremely reasonable, and should be
3    approved.

4

5    **VIII.  CONCLUSION**

6    The proposed class action Settlement is fair, adequate, and reasonable.  It will
7    result in substantial benefits to Settlement Class members (without requiring them to
8    submit any claim form).   It is non-collusive, and it was achieved as the result of
9    informed, extensive, and arms' length negotiations conducted by experienced
10   counsel in the direct presence of and with the participation of the Court during two
11   day-long Settlement Conferences.   The Parties respectfully request that the Court
12   grant final approval of the proposed Settlement and sign the proposed Order and
13   Judgment in the form submitted concurrently herewith.

14

15                              Respectfully submitted,

16   Dated: September 2, 2008         THE LINDE LAW FIRM

17

18                              By:  __/s/ Chant Yedalian
19                                  Douglas A. Linde
20                                  Chant Yedalian
                                   Attorneys   for   Plaintiff,   Jessica   Clark,
21                                  individually and on behalf of others similarly
22                                  situated

23

24   Dated: September 2, 2008         FOLEY & LARDNER LLP

25

26                              By: _____
27                                  Kevin E. Hyde
                                   Attorneys for Defendant, Stein Mart, Inc.
28

- 21 -

Here, there is only one class representative, and the requested enhancement award in the amount of $2,500 is modest, extremely reasonable, and should be approved.

## VIII.  CONCLUSION

The proposed class action Settlement is fair, adequate, and reasonable.  It will result in substantial benefits to Settlement Class members (without requiring them to submit any claim form).  It is non-collusive, and it was achieved as the result of informed, extensive, and arms' length negotiations conducted by experienced counsel in the direct presence of and with the participation of the Court during two day-long Settlement Conferences.  The Parties respectfully request that the Court grant final approval of the proposed Settlement and sign the proposed Order and Judgment in the form submitted concurrently herewith.

Respectfully submitted,

Dated: September 2, 2008         THE LINDE LAW FIRM


By:   /s/ Chant Yedalian
Douglas A. Linde
Chant Yedalian
Attorneys    for    Plaintiff,    Jessica    Clark,
individually and on behalf of others similarly
situated


Dated: September 2, 2008         FOLEY & LARDNER LLP


By: _____
Kevin E. Hyde
Attorneys for Defendant, Stein Mart, Inc.

- 21 -